IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 2955 |
| | ) | |
| KEVIN SMITH, indv. and d/b/a FAVOR ENTERTAINMENT LLA d/b/a BISTRO and FAVOR ENTERTAINMENT d/b/a J BISTRO, | ) ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the plaintiff's motion for default judgment. For the reasons explained below, the Court awards the sum of $10,600 in statutory liquidated damages, enhanced damages, and attorney's fees and costs, and enters a final default judgment against the defendants in that amount.

**I. BACKGROUND**

Plaintiff J&J Sports Productions, Inc. ("J&J Sports"), filed this action alleging that Defendants Kevin Smith, individually and d/b/a Favor Entertainment d/b/a Bistro and Favor Entertainment d/b/a J Bistro, knowingly and willfully violated certain provisions of the Communications Act of 1934 ("Act"), 47 U.S.C. § 605, and the Cable Communications Policy Act of 1984, 47 U.S.C. § 553, by unlawfully intercepting and exhibiting the "Floyd Mayweather, Jr. v. Miguel Cotto, WBA World Light Middleweight Championship Fight Program" ("Program") on May 5, 2012. The defendants' response to the plaintiff's complaint was due by June 9, 2014; none has been filed. J&J Sports now moves for default judgment; its motion is

accompanied by an affidavit and other documents in support of its request for statutory and enhanced damages, attorney's fees and costs, and the entry of judgment against the defendants.[1]

The background facts of this case, except those relating to damages, are taken from the allegations in the plaintiff's complaint and are deemed admitted as a consequence of the defendants' default. *See, e.g., Black v. Lane,* 22 F.3d 1395, 1397 n.4 (7th Cir. 1994). J&J Sports has established that it paid for and was thereafter granted the exclusive nationwide television distribution rights to the Program. Various commercial establishments (*i.e.,* hotels, bars, restaurants, etc.) could, for a fee, obtain limited sublicensing rights from J&J Sports to exhibit the Program to patrons within their respective establishments. J&J Sports states that it expended substantial sums marketing, advertising, promoting, administering, and transmitting the Program to its paying customers, the aforementioned commercial establishments. Understandably, J&J Sports wishes to enforce its distribution rights and ensure that only those who have paid the appropriate fee, pursuant to a contract, gain access to the Program.

To ensure that only legitimate sub-licensees receive the Program, the plaintiff retains investigators that visit commercial establishments to determine whether the Program is being exhibited without proper authorization. J&J Sports has submitted the affidavit of one such investigator, who avers that he entered J Bistro at 9:49 p.m. on May 5, 2012, the night of the Program, and that a ten-dollar cover charge was being collected. The investigator observed four

---

[1] Most courts considering the question in cases brought under § 553 and § 605 assess the propriety of imposing individual liability on a corporate officer where the criteria of the copyright benefit-and-control test are met. *See, e.g.*, *Joe Hand Promotions, Inc. v. Bragg*, No. 13 C 02725, 2014 WL 2589242, at *5 (S.D. Cal. June 10, 2014); *Joe Hand Promotions, Inc. v. Double Down Entm't, LLC*, No. 11 C 02438, 2014 WL 994382, at *3-4 (D.S.C. Mar. 13, 2014). That is, where, as here, an individual has the right and ability to supervise the activity and a financial interest in it, that individual may be liable. *See Hard Rock Cafe Licensing Corp. v. Concession Services, Inc.,* 955 F.2d 1143, 1150 (7th Cir. 1992) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)). An individual who personally participated in the activity may also be liable.

televisions displaying the Program. The investigator counted approximately fifty-nine patrons in the defendants' establishment on three separate headcounts. The investigator estimated that establishment could hold approximately sixty to seventy people.

As a result of the defendants' defaults, they are deemed to have unlawfully intercepted the match and shown it to their patrons and to have done so willfully and for the purposes of direct or indirect commercial advantage or private financial gain. *See Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

## II.  ANALYSIS

J&J Sports alleges that the defendants violated both 47 U.S.C. §§ 605 and 553. The plaintiff's complaint, brief, and affidavit support a conclusion that the defendants intercepted, without authorization, a transmission of the Program and broadcast it to its patrons. Whether § 605 or § 553 applies to those facts depends on the point at which the alleged interception occurred. However, the record contains no allegations or evidence substantiating the nature of the transmission (*i.e.,* transmission over a cable system or satellite broadcast) that was intercepted by the defendants. That said, the Court concludes that although the precise means of transmission has not been determined, under the circumstances of this case, where the plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of the defendants' failure to appear or defend in this adjudication, J&J Sports should not suffer the resulting prejudice. In any event, J&J Sports is seeking a judgment and damages pursuant to § 605 only, and the practical impact of which statute applies is nil; the Court's calculation of

damages fits within either statutory scheme. Thus, the Court concludes that the plaintiff has established a violation of § 605.

Under §605(a), a claimant may elect actual or statutory damages pursuant to § 605(e)(3)(C)(i). The plaintiff has elected statutory liquidated damages, which range from a minimum of $1,000 to a maximum of $10,000, within the Court's discretion.[2] The plaintiff also seeks enhanced damages for willful violations under § 605(e)(3)(C)(ii).[3] That section permits enhanced damages of up to $100,000, in the discretion of the Court, where the defendant has exhibited disregard for the governing statute and indifference to its requirements. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.,* 146 F. Supp. 2d 955, 959-61 (E.D. Wis. 2001). The plaintiff has also requested an award of attorney's fees and costs in the amount of $1813.25 pursuant to § 605(e)(3)(B)(iii).[4]

The Court first turns to the plaintiff's request for statutory damages. As courts in this district have previously noted, "[w]hen the number of patrons at defendant's establishment is known, most courts award damages under § 605 based on the number of patrons." *J&J Sports Production, Inc. v. Ramirez et al,* No. 08 C 03354, Minute Order, at 1-2 (N.D. Ill. Sept. 18,

---

[2] Under § 605(e)(3)(C)(i)(II), an aggrieved party "may recover an award of statutory damages for each violation of subsection (a) . . . in a sum not less than $1,000 or more than $10,000 as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II).

[3] Section 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000 for each violation on subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C)(ii).

[4] Section 605(e)(3)(B)(iii) states that the Court "shall direct the recovery of full costs, including awarding attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

2008), ECF No. 20 (citing *That's Entertainment, Inc. v. Old Bridge Tavern,* No. 94 C 02612, 1996 WL 148045, at *3 (N.D. Ill. Mar. 28, 1996) (awarding $55 per patron to "sufficiently compensate[] plaintiff while . . . also deter[ring] defendant from future violations")); *J&J Sports Productions, Inc. v. Schrader Rest. Corp.,* 485 F. Supp. 2d 422, 423 (S.D.N.Y. 2007) (awarding damages based on Judge Baer's formula of $50 per patron, plus $1,000 for each willful violation, plus attorney's fees and costs); *see also Googies Luncheonette,* 77 F. Supp. 2d at 490 (adopting a method of awarding a set sum to be multiplied by the number of patrons, plus any cover charge or other profit that can be attributed to the unauthorized showing, in order to fully compensate the plaintiff and fully divest the defendant of any profits). On the date in question, the investigator observed, on three separate headcounts, approximately 59 patrons.

While other courts have determined a set sum per patron (*i.e.,* $55 per patron), the plaintiff here has submitted a rate card setting the fees that commercial establishments would have had to pay to obtain sublicensing rights. Based on an estimated maximum capacity of seventy patrons at J Bistro,[5] the defendants would have had to pay $2200 to order the Program. *See* Dkt. 10-3, Ex. C (setting the rate for a minimum seating of 0 to 100 at $2200). This base amount, however, would only compensate the plaintiff for its loss, and not fully divest the defendants of any profits derived from unlawfully exhibiting the program, such as the sale of drinks. But as noted above, Plaintiff has alleged and, in the absence of any response by defendants, the Court has found that the defendants' violation was willful within the meaning of the Act, and therefore subject to enhanced damages.

---

[5] The plaintiff states in its Motion for Default Judgment that approximately fifty-nine people were in J Bistro on the evening of May 5, 2012, which appears to be an average of the headcounts conducted by the investigator. *See* Aff. of Larry Biela (counting 58, 58, and 61), Dkt. 10-2. Whether the number of patrons was an average of 59 or a high of 61, the defendants would have had to pay $2200 for the Program because the plaintiff's rate of $2200 applies to 0 to 100 patrons, and the investigator estimated the capacity of the establishment to be seventy patrons.

In regard to enhanced damages, the Act simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the Court. In considering how much to award in enhanced damages, courts have considered a number of factors, including: (1) the number of violations; (2) defendants' unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendants advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event. *See Ramirez,* No 08 C 03354, at 2 (citing *Kingvision Pay-Per-View, Ltd. v. Rodriguez,* No. 02 Civ. 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003)). In addition to those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct. *See, e.g., Garden City Boxing Club, Inc. v. Luis Polanco & Luischia Restaurant Corp.,* No. 05 Civ. 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006); *Rodriguez,* 2003 WL 548891, at *2. "An additional award for willfulness will put violators 'on notice that it costs less to obey the . . . laws than to violate them.'" *Googies Luncheonette,* 77 F. Supp. 2d at 491 (quoting *Rodgers v. Eighty Four Lumber Co.,* 623 F. Supp. 889, 892 (W.D. Pa. 1985)).

The record before the Court does not establish that the defendants advertised the Program. However, the investigator's affidavit does establish that the defendants displayed the Program on four of the defendants' televisions and that they charged a ten-dollar cover charge to patrons. Nothing in the record indicates any other theft of cable services or other intellectual property by this defendant. With *Googies Luncheonette* as a guide, the Court therefore awards the plaintiff an additional $6,600 in enhanced damages—a factor of four times the base award derived from the defendants' display of the Program on four televisions, additional profits derived from the unlawful exhibition of the Program (*e.g.,* drink sales), in addition to the need to deter future violations. *See Googies Luncheonette,* 77 F. Supp. at 491 (awarding enhanced

damages of a factor of eight times the base award "to…persuade [the] defendant that it is not only lawful to obtain property only as allowed, but less expensive."). Accordingly, statutory and enhanced damages total $8,800.

Finally, the Court has reviewed the materials submitted in support of the plaintiff's request for $1813.25 in attorney's fees and costs. The Court finds the amount in the affidavit well supported and reasonable given the circumstances. Therefore, the sum of damages and attorney's fees and costs is $10,613.25, which the Court, in its discretion and consistent with the statute, adjusts to $10,600.

\* \* \*

For the reasons stated above, the Court enters a final judgment for the plaintiff and against the defendants, jointly and severally, in the amount of $10,600.

Dated: 07/31/14

Hon. John J. Tharp, Jr., U.S. District Court Judge